## APPEAL OF W. A. BELLINGRATH.

Docket No. 2018.  Submitted April 20, 1925.  Decided November 12, 1925.

The taxpayer and wife entered into a partnership agreement on or about December 31, 1919, by which enterprises theretofore conducted by the taxpayer alone would thereafter be conducted as a partnership. *Held*, that a valid partnership existed between the taxpayer and wife for the calendar year 1920.

*William M. Williams, Esq.*, for the taxpayer.
*B. G. Simpich, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the year 1920 in the amount of $17,584.70. The question in issue is whether a valid partnership existed between the taxpayer and wife, as claimed.

### FINDINGS OF FACT.

1. The taxpayer is an individual residing at Cloverdale, Montgomery, Ala., and has been engaged in the business of bottling Coca Cola since 1903.

2. Prior to December 31, 1919, he was the sole owner of the business conducted by him as an individual under the name of Coca Cola Bottling Co. of Montgomery, Ala., and under the name of Coca Cola Bottling Co. of Tuscaloosa, Ala., and was the sole owner of the assets employed in the conduct of said businesses. Prior to this time he also was a member of three partnerships, namely, Coca Cola Bottling Co. of Dothan, Ala., in which he owned a three-fourths interest; Coca Cola Bottling Co. of Selma, Ala.; and Coca Cola Bottling Co. of Andalusia, Ala., in each of the latter two of which he owned a one-half interest. The partnership agreements were not in writing.

3. W. M. Brown, of Selma, Ala., a brother-in-law of the taxpayer, was the owner of a one-half interest in the business of the Coca Cola Bottling Co. of Selma, Ala.; G. M. Lewis, of Dothan, Ala., was the owner of a one-fourth interest in the business of the Coca Cola

Bottling Co. of Dothan, Ala., and John L. Barnett, a brother-in-law of the taxpayer, was the owner of a one-half interest in the business of the Coca Cola Bottling Co. of Andalusia, Ala.

4. The taxpayer was the executive head and S. E. Elmore was general manager and auditor of these companies, but the general manager and auditor had no interest in the business. He audited the books and distributed the income each year according to the interest each partner had in the business.

5. In the year 1914 the taxpayer suffered a stroke of paralysis and was taken to Hot Springs, Ark., to New York, and to Philadelphia for treatment by skilled physicians, returning home about January 1, 1915. Taxpayer has not yet fully recovered from the stroke of paralysis that he suffered in 1914. During the years 1915 and 1916 he was too ill to take actual charge of the business and relied largely upon his wife, who was a business woman, for information regarding it. In 1917 and 1918 the taxpayer was more active in the business but relied largely on others, including his wife, who was his assistant in all his affairs, for information about his business.

6. About the middle of the year 1919 the taxpayer discussed with his attorney and his banker at Montgomery, Ala., the matter of making his wife a partner in the business. They both advised him it was the proper thing to do, and the banker thought she ought to have an active hold on the business. During the fall of 1919 the taxpayer visited each one of the places of business and discussed with each one of the partners the proposition of transferring one-half of his interest in the holdings of each company to his wife and to make her a partner in the business. Each one of the partners said that was satisfactory and made no objections.

7. The taxpayer then caused his attorney to prepare the following document, which was signed by the taxpayer and his wife, Mary E. Bellingrath, on or about December 31, 1919:

This agreement this day made and entered into by and between the undersigned, W. A. Bellingrath, party of the first part, and Mary E. Bellingrath, party of the second part,

Witnesseth:

That for and in consideration of the sum of One Dollar, and other sufficient and valuable consideration in hand paid, the receipt whereof is hereby acknowledged, the party of the first part does hereby sell, transfer and assign to the party of the second part, an undivided one-half interest in the property, business, assets and good will owned by party of the first part, in the following businesses or enterprises, namely:

The Coca Cola Bottling Company of Montgomery, Alabama; the Coca Cola Bottling Company of Tuscaloosa, Alabama; the Coca Cola Bottling Company of Dothan, Alabama, and the Coca Cola Bottling Company of Selma, Alabama, and the Coca Cola Bottling Company of Andalusia, Alabama.

It is understood that each of these enterprises are going concerns, and party of the second part hereby assumes one-half of the liability or liabilities that may accrue in the conduct of said enterprises against the party of the first

part, and shall be entitled to one-half of the net earnings which shall accrue in favor of the interest of party of the first part in said enterprises.

It being further understood and agreed that party of the first part shall, so far as concerns the interest of party of the second part in said enterprises, have the exclusive management and control of said enterprises.

8. Each of these enterprises was a going concern and Mary E. Bellingrath, according to the terms of the agreement, was to assume one-half of the liability or liabilities that might accrue in the conduct of said enterprises or businesses and was also entitled to one-half of the net earnings which would have accrued to the taxpayer had this agreement not been executed.

9. On December 31, 1919, the assets owned by and used in the business of the various companies were approximately as follows:

Coca Cola Bottling Co. of Montgomery _____ $245,000 or $250,000
Coca Cola Bottling Co. of Tuscaloosa _____ 50,000
Coca Cola Bottling Co. of Selma _____ 95,000
Coca Cola Bottling Co. of Dothan _____ 62,000
Coca Cola Bottling Co. of Andalusia _____ 36,000

Among the said assets was some real estate which was held and recorded in the partnership name.

10. The taxpayer in the early part of the year 1920 delivered the agreement, above referred to, to S. E. Elmore, general manager and auditor of these companies, to be used by him in making his audits. The books of the several companies for the year 1920 were closed shortly after January 1, 1921, and there was at that time set up on the books of each company the distributive share of the 1920 profits of each partner, including Mary E. Bellingrath, on the basis of the agreement dated December 31, 1919, and Mary E. Bellingrath actually received from each company her share, so set apart for her, in the aggregate amount of $41,127.83.

11. The Commissioner, in auditing the individual income-tax return of the taxpayer for the year 1920, added the $41,127.83 to the income returned by him and proposed to assess against him an additional tax in the sum of $17,584.70.

12. During the year 1919 and prior years Mary E. Bellingrath had a separate income of approximately $8,000 or $10,000.

DECISION.

The deficiency determined by the Commissioner is disallowed.

OPINION.

SMITH: The deficiency determined in this appeal arose from the action of the Commissioner in adding to the income reported by the taxpayer $41,127.83, which is claimed to have been income of the taxpayer's wife as her share of the profits of an alleged partnership

existing between herself and her husband, the taxpayer herein. The issue is whether the wife was in reality a partner in the Coca Cola companies enumerated in the findings of fact.

From the uncontroverted evidence in this appeal and from the record as it now stands, we must sustain the contention of the taxpayer that a *bona fide* partnership existed between himself and his wife and that the wife is taxable upon her distributive shares of the profits of the partnership enterprises for the year 1920. We have the written partnership contract, executed prior to the taxable year, the agreement between the members of the partnership to divide the profits and losses, and the actual distribution of the actual partnership profits to the taxpayer's wife. This is true with respect not only to the business conducted by the taxpayer as a sole proprietorship prior to December 31, 1919, but it is also true with respect to the partnerships of which the taxpayer was a member prior to that date; under the partnership agreement executed under date of December 31, 1919, the taxpayer's wife was made a member of the partnerships in which the taxpayer was interested and the other members of those partnerships agreed to take in the taxpayer's wife as a member of the partnerships in which they were interested.

Under the laws of the State of Alabama, husband and wife are authorized to be partners in any kind of lawful business. *Belser* v. *Tuscumbia Banking Co.*, 105 Ala. 514; 17 So. 40; *Schlapback* v. *Long*, 90 Ala. 525; 8 So. 113. In the last-named case the court said:

As modified by the statutes, there is nothing in the relation of husband and wife which prevents them from contracting to enter into partnership and constituting a firm.

At the hearing of this appeal some question was raised as to the effectiveness of the partnership agreement upon the real property owned by the partnership, as the instrument was not witnessed as required for the transfer of real estate. It appears, however, from the evidence that the real property was acquired and stood in the partnership name. The courts of Alabama hold that such lands are to be treated as personalty until the purposes of the partnership are accomplished. *Walton* v. *Atkinson*, 165 Ala. 644; 51 So. 826; *Brewer* v. *Browne*, 68 Ala. 210; *Espy* v. *Comer*, 76 Ala. 501. In view of the uncontradicted testimony on the part of the taxpayer, we are of the opinion that a legal partnership did in fact exist between the taxpayer and his wife and between these parties and the other members of the partnerships in which the taxpayer was interested prior to December 31, 1919, which entitled the wife to her distributive share of the profits.